[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and for other relief brought to the Superior Court for the Judicial District of New Haven.
Many of the underlying facts in this case are not in dispute. The plaintiff and the defendant, whose maiden name was Cheryl A. Nystrand, were married at New Haven, Connecticut, on May 19, 1979. The plaintiff has resided continuously in the State of Connecticut for at least twelve months next preceding the date of the filing of the complaint. The marriage between the parties has broken down irretrievably with no reasonable prospects of reconciliation. There are no minor children issue of the marriage and no minor children have been born to the CT Page 3582 defendant wife since the date of marriage of the parties. Neither party is a recipient of State assistance.
The plaintiff is 34 years old and the defendant will be 34 years old in May of 1993. The parties met during the plaintiff's junior year in high school. He was 17 at the time and she was 16. They continued to date until they were married. The plaintiff lived at the defendant's parents' residence for a period of time prior to graduating high school. After their marriage they moved into their own apartment for approximately one year and then moved back to her parents' residence in order to save money to purchase a home. They resided with her parents for approximately two years following their marriage and also resided with the defendant's grandmother for a period of time following their marriage. Both parties worked full time during their marriage and earned approximately equal amounts during their marriage. The plaintiff has a high school degree and one and one-half years of college at the Greater New Haven State College. He worked full time while going to college. The plaintiff is a mechanical and metalurgical technician. The defendant has a high school diploma and has not received any further education. The plaintiff was unable to work for a period of approximately one and one-half years due to an automobile accident that occurred in November of 1985. As a result of that accident, the plaintiff received a severe knee injury as well as injuries to his shoulder and neck. He has had seven knee operations. He has torn ligaments and severed cartilage in the knee. He will need future surgery to remove staples that are in his leg, and will also need a total knee replacement in approximately ten to twelve years. The staple removal procedure will result in medical costs of approximately $3,000.00 and will also result in the plaintiff losing about one week from work. The present cost of a knee replacement surgery is in excess of $30,000.00 for doctor, hospital, nursing and rehabilitation. As a result of that knee replacement he will be out of work for an undetermined period of time. He presently has a 25% permanent partial knee disability, a 5% permanent partial shoulder disability and a 5% permanent partial neck disability. His knee gives him constant soreness with change in weather or upon twisting. He has difficulty in running on hard surfaces. The knee injury affects his ability to sleep and also affects his ability to engage in other physical activities. During the approximately year and one-half that he was unable to work, he received approximately two-thirds of his gross pay as a result of a disability policy that he had through his place of employment. CT Page 3583 The parties own a family home located at 39 Bradley Street, North Haven, Connecticut. The court finds that the fair market value of that home is $140,000.00. There is a first mortgage on that home with a balance of $123,811.62, plus $100.00 additional, and there is also a sewer lien on the home in the amount of $881.21. The equity in the home is, therefore, $15,207.17. The plaintiff settled his automobile personal injury case that resulted in his injuries on July 17, 1989. On that date he received a net of $67,437.00 plus a structured settlement. When the parties purchased the family home on December 15, 1989, approximately $36,180.00 was paid down in cash from the plaintiff's $67,437.00 cash settlement. The parties did not have any savings at the time they married and did not have any savings prior to the time the plaintiff's accident case was settled. There were improvements made to the family home by the parties, with assistance from the defendant's father, consisting of a remodeling of the kitchen, a remodeling of one bathroom, and the installation of new kitchen cabinets and counter tops and ceramic tile. The parties also remodelled the basement. The cost of materials that went into the family home for remodelling was approximately $25,000.00. The defendant's parents paid for the foyer tile and the cost of replacing windows as part of the remodelling work, at a total cost of approximately $1500.00. The defendant also had an automobile accident in the mid-1980s and she received a net settlement of approximately $10,000.00 that went into the parties' joint savings. Part of that money was used towards the $25,000.00 of material costs. The plaintiff's structured settlement pays to him $275.00 monthly, guaranteed until June 1, 2009, regardless of whether he lives to that date or not. It then will pay him $275.00 monthly amounts until his death. He will also receive a guaranteed payment of $10,000.00 on June 1, 1994, a guaranteed payment of $20,000.00 on June 1 2004, and a guaranteed payment of $100,000.00 on June 1, 2014.
The plaintiff has a gross weekly income of $616.22, plus $64.00 weekly from his accident settlement. The defendant has a gross weekly income of $394.00 working at Home Depot. While her financial affidavit shows a gross weekly income of $374.30, she testified that she had recently received a pay increase and her gross weekly is now $394.00. The defendant had been employed at another location from 1985 until December 1991, grossing approximately $15.40 hourly at the time she left. She left due to harassment by a co-worker. She has been employed full time at Home Depot since shortly after leaving her prior employment. In addition to working full time during the marriage, the defendant CT Page 3584 was also responsible for doing the laundry, cooking, cleaning and grocery shopping. During the time the parties were married her parents also made cash gifts to them including $2500.00 to be used as part of expenses for an adoption that the parties were involved in but did not complete. The defendant received back $1500.00 of that $2500.00 and kept that money for herself.
At the present time there is a purchaser ready to complete a closing on the family home on April 15, 1993, for $140,000.00. The defendant does not wish to sell the home, while the plaintiff does.
The parties owe Connecticut National Bank approximately $3500.00. That debt was incurred prior to the purchase of the family home in order to consolidate existing bills. The plaintiff's financial affidavit also shows a debt VISA Echlin Federal Credit Union of $1100.00. That debt was incurred by him after the commencement of the present dissolution action. The plaintiff's financial affidavit also shows a debt for attorney's fees that was incurred as a result of having been represented by a prior attorney in the dissolution action. His affidavit also shows another debt to Echlin Federal Credit Union in the amount of $400.00. That $400.00 debt was incurred in approximately January 1993 when the plaintiff purchased a replacement engine for the defendant's vehicle and financed it through Echlin. The plaintiffs financial affidavit also shows a sewer lien on the family residence with a balance of $881.20. His financial affidavit also shows that he owns a 1988 Toyota pickup. The court finds that that vehicle has a value of $5000.00. Plaintiff's financial affidavit shows a loan balance of $8000.00 on that vehicle. That loan balance was incurred in approximately August of 1992 as a part of a consolidation of existing bills of the parties. The defendant had a previous loan balance on his vehicle of $1759.06 that was increased to $8759.06. The increase in the financing resulted in the following debts being paid: (1) Connecticut National Bank payment of $1561.88, which resulted in a previous balance of $2005.62 being reduced to $443.74; (2) CitiBank VISA payment of $2549.70, resulting in a previous balance of $6580.64 being reduced to $4030.94; (3) payment of $664.84 to Sears, resulting in a previous balance of $4030.94 being reduced to $3366.10; (4) payment of $104.42 to Southern Connecticut Gas, resulting in a previous balance of $443.74 being reduced to $339.32; (5) payment of $222.58 to Ridgehill Animal Hospital, resulting in a previous balance of $3366.10 being reduced to $3143.52; (6) payment to Home Depot of $709.18, CT Page 3585 resulting in a previous balance of $7289.82 being reduced to $6580.64. These payments total $5812.60, which when deducted from the $7000.00 received part of the refinancing, left a balance of $1187.40 which the plaintiff retained.
The parties also own a Minolta camera, together with flash equipment, lenses, and a carrying case. The parties are in dispute as to the value of that camera and equipment, with the plaintiff claiming it has a $1000.00 value, and the defendant claiming that it has a $300.00. The court finds that the value of the camera, equipment and carrying case is $1000.00.
This court has considered and weighed the factors set forth in Conn. General Statutes 46b-81(c) in determining the issues of assignment of property, and has considered and weighed the factors set forth in 46b-82 in determining alimony. This court has also considered and weighed the factors set forth in 46b-62
in determining whether to grant attorney's fees.
ORDER
The court hereby enters the following orders:
A. The marriage of the parties to this action is hereby dissolved on the grounds of irretrievable breakdown and each of the parties are hereby declared to be single and unmarried.
B. The court hereby enters the following orders by way of alimony:
1. No alimony is awarded in favor of either party.
C. The court enters the following orders by way of assignment of property:
 1. The court orders that the plaintiff quitclaim to the defendant the jointly owned family residence at 39 Bradley Street, North Haven, Connecticut. The defendant is to pay the first mortgage and the sewer lien and taxes and is to hold the plaintiff harmless. In the event the defendant sells the family residence, then the net proceeds of such sale are to be held in escrow by counsel for the defendant pending a possible appeal of this decision. If no appeal is taken, then the proceeds of such sale may be retained by the defendant. CT Page 3586
 2. All furnishings and furniture at the family home including but not limited to the stove, refrigerator, dishwasher, clothes dryer, and clothes washer are assigned to the defendant.
 3. The Minolta camera is assigned to the plaintiff as well as all of the equipment and carrying case. The defendant is to bring the camera to the office of her attorney where the plaintiff may pick it up.
 4. The $8000.00 debt that is shown as a loan balance on the plaintiff's Toyota pickup on his financial affidavit, and is owed to the Echlin Credit Union, is to be paid by the plaintiff and he is to hold the defendant harmless therefrom.
 5. The attorney's fee shown on the plaintiff's financial affidavit in the amount of $3600.00, as well as the Echlin Credit Union liabilities shown on his affidavit in the amount of $400.00 and $1110.00, are each to be paid by the plaintiff and he is to hold the defendant harmless therefrom. Further, the Connecticut National Bank liability shown on the plaintiff's financial affidavit in the amount of $3500.00 is to be paid by the plaintiff and he is to hold the defendant harmless therefrom.
 6. All liabilities shown on the defendant's financial affidavit, except for the Connecticut National Bank liability, are to be paid by the defendant and she is to hold the plaintiff harmless therefrom.
 7. The 1968 Chevrolet Camaro shown on the plaintiff's financial affidavit is assigned to the plaintiff.
 8. The "other personal property" shown on the plaintiff's financial affidavit, other than for the household furnishings and fixtures, are awarded to the plaintiff.
 9. The bank accounts shown on the plaintiff's financial affidavit, as well as the deferred compensation plan shown on his affidavit, is awarded solely to the plaintiff.
10. The balance of the payments due to the plaintiff CT Page 3587 under his structured settlement from his automobile accident are awarded solely to the plaintiff.
 11. The diamond rings and necklace shown on the defendant's financial affidavit, as well as the 1985 Dodge motor vehicle, together with all of her personal property, as well as the furniture, fixtures and appliances at the family home, are all awarded to the defendant.
 12. The plaintiff is to vacate the family residence by April 30, 1993 or upon sale, whichever occurs first.
 13. The plaintiff is to pay to the defendant as a lump sum property award the sum of $5000.00 without interest by June 15, 1994.
 14. The defendant is to hold the plaintiff harmless from any claims made by either or both of her parents arising out of their advancing $2500.00 towards the adoption expenses.
D. The court enters the following order by way of attorney's fees:
 1. No attorney's fees are awarded in favor of either party.
F. Miscellaneous Orders —
 1. Counsel for the plaintiff is to prepare the judgment file and send it to counsel for the defendant for signature and filing.
 2. The defendant is restored her maiden name of Cheryl Nystrand.
Sidney Axelrod, Judge CT Page 3588